WESTEL-MILWAUKEE COMPANY, INC., d/b/a Cellular One,
Plaintiff-Appellant,

v.

WALWORTH COUNTY, a municipal corporation,
Walworth County Park and Planning Commission,
Francis H. Dobbs, Director of Walworth County
Department of Planning, Zoning and Sanitation,
Defendants-Respondents.

Court of Appeals

*No. 95–2097. Submitted on briefs July 29, 1996.—Decided
September 4, 1996.*

(Also reported in 556 N.W.2d 107.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William P. O'Connor* of *Wheeler, Van Sickle & Anderson, S.C.* of Madison.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Russell W. Devitt* of *Soffa & Devitt* of Whitewater.

Before Anderson, P.J., Brown and Snyder, JJ.

BROWN, J.   The Telecommunications Act of 1996 contains provisions which limit the power of local authorities to make zoning decisions involving the placement of cellular phone towers and related equipment. Below we discuss how this new law affects the Walworth County Park and Planning Commission's decision to deny Cellular One a permit to construct a tower. We conclude that this new law should apply to Cellular One's application and direct the County to reconsider this matter.

Cellular One wants to build a 200-foot telecommunications tower in northeast Walworth County. In March 1994, it applied for a conditional use permit and the County held appropriate hearings.

Local residents voiced opposition to the proposed tower. They believed that the tower's electromagnetic emissions might create human and animal health hazards. In addition, the residents were concerned that the tower would depreciate the value of the surrounding property. The residents also objected to the negative aesthetics of having a tower in the midst of scenic farmland.

In response, Cellular One brought an expert on health physics from the University of California who testified that the tower presented no health hazard. It also claimed that there was no evidence that these towers lowered area property values. Cellular One also explained that it would design the tower to be as unobtrusive as possible. For example, the tower would not have strobe warning lights.

In August 1994, after seeking further information from Cellular One, the County denied its petition for a conditional use permit. Its decision sets out the following reasoning:

> [The petition] has been denied based on the reason that neighbors (Mr. and Mrs. William B. Dopke) feel the location of this tower would reduce the value of their property and that it is too close to the Dopke property and their residence.

In November 1994, Cellular One sought certiorari review of the County's decision in circuit court. Cellular One also requested that the court enlarge the record and consider evidence that the County had previously approved similarly situated towers.

Cellular One hoped to show that the County had acted in a "discriminatory manner."

The circuit court ruled that it did not have authority to take additional evidence in common law certiorari proceedings and refused to supplement the record. Then, turning to the information actually before the County, the court ruled that the existing record contained sufficient evidence to support a decision to deny the permit. Cellular One now renews its request for judicial relief.

Before we turn to the merits of Cellular One's complaint, we will address the Telecommunications Act of 1996 and how its provisions directed at the "Preservation of local zoning authority" affect this case. *See* 47 U.S.C.A. § 332(c)(7) (West. Supp. 1996). This Act was signed after the parties filed this appeal and we accordingly asked for supplemental briefing on this question.

We were able to identify only one decision which considered these provisions concerning local zoning authority. That decision addressed the very narrow question of whether local authorities retained the authority to enact moratoriums on issuing permits for wireless communication facilities. *See Sprint Spectrum, L.P. v. City of Medina*, 924 F. Supp. 1036, 1037 (W.D. Wash. 1996). The district court concluded that the Act had no effect on this power. *Id.* at 1040.

Nonetheless, when we interpret a statute, our best guide is the language of the statute. *See Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987). The lack of interpretative case law, or other authority, does not impede our analysis.

The provisions of the Act relating to local zoning set out five rules. *See* 47 U.S.C.A. § 332(c)(7)(B). Aside

from these rules, however, the Act places no other limits on "the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities." *Id.* § 332(c)(7)(A).

■

The first set of provisions prohibits local authorities from using the zoning process to "unreasonably discriminate" against competing service providers. *Id.* § 332(c)(7)(B)(i)(I). At the margin, we have set out the full text of this subsection and each of the other subsections we describe.[1] A related subsection likewise prohibits local authorities from enforcing their zoning laws in a manner which has the "effect" of banishing wireless service from a local area. *Id.* § 332(c)(7)(B)(i)(II). Congress's command that local authorities "shall not" discriminate indicates that it wants local decision makers to consider how their zoning decisions affect the marketplace for communication services. Congress, however, has not placed competition above all local concerns as the Act nonetheless strikes a balance between local zoning power and promotion of free competition. The Act prohibits such local discrimination only if it is "unreasonable." *See* 47 U.S.C.A. § 332(c)(7)(B).

---

[1] 47 U.S.C.A. § 332(c)(7)(B)(i) (West Supp. 1996) provides:

The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

(I)   shall not unreasonably discriminate among providers of functionally equivalent services; and

(II)   shall not prohibit or have the effect of prohibiting the provisions of personal wireless services.

■

Next, with this Act, Congress has tried to stop local authorities from keeping wireless providers tied up in the hearing process. The Act requires local authorities to make a decision on such matters within a "reasonable period of time." *Id.* § 332(c)(7)(B)(ii).[2] Still, the Federal District Court for the Western District of Washington, the only other court to consider these provisions, concluded that a city's decision to enforce a six-month moratorium on these facilities did not violate this provision. *See Sprint Spectrum,* 924 F. Supp. at 1040. The district court reasoned that the Act does not require local authorities to give preferential treatment to these providers, but only requires that local governments consider such requests in accordance with the generally applicable time frames for zoning-related decision making. *Id.* We agree with that court's interpretation and reasoning.

■

Third, the Act requires local authorities to support their decisions with "substantial evidence" and written findings. 47 U.S.C.A. § 332(c)(7)(B)(iii).[3] This provision, however, does not change the methodology

---

[2] Section 332(c)(7)(B)(ii) provides:

A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

[3] Section 332(c)(7)(B)(iii) provides:

Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

250

that local zoning authorities should apply when making findings because their decisions are already gauged under the "substantial evidence test." *See Clark v. Waupaca County Bd. of Adjustment,* 186 Wis. 2d 300, 304, 519 N.W.2d 782, 784 (Ct. App. 1994). In fact, the Conference Agreement accompanying the Act states that the words "substantial evidence" were indeed selected to reflect the standard currently applicable in jurisdictions across the nation. *See* H.R. CONF. REP. NO. 458, 104th Cong., 2d Sess. § 704 (1996), *microformed on* Sup. Docs. No. Y 1.1/8:104-458 (U.S. Gov't Printing Office). Accordingly, we conclude that the Act does not require any change in the factfinding procedures that local zoning authorities currently follow.

The Act also contains a provision directed at the health concerns associated with the radio emissions from wireless transmitters. The Act plainly prohibits a local authority from considering the possible effects of these emissions in their decision making. 47 U.S.C.A. § 332(c)(7)(B)(iv).[4] As long as the proposed facility meets Federal Communications Commission standards, the local authority may not consider any claim that authorizing a wireless communication facility might cause local health problems. *See id.*

Finally, the Act contains a jurisdictional provision allowing wireless providers to seek judicial or

---

[4] Section 332(c)(7)(B)(iv) provides:

No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

251

administrative relief should a local authority not comply with the four above standards. *See id.* § 332(c)(7)(B)(v).[5] This section, therefore, has no direct effect on how local zoning authorities should conduct their hearing process.

This discussion illustrates that the new Act makes some substantive changes to the local zoning process. The question that remains, however, is whether this new law should be applied to Cellular One's application. Given the unique circumstances of this case, we believe that it should, and therefore direct that the County reconsider this matter.

First, our scan of the evidence that Cellular One offered to the circuit court suggests that the company has data which may be material to the open competition issues that are emphasized in the new federal law. Indeed, such concerns about nondiscriminatory placement of these transmission towers might balance against the County's stated concerns about declining property values.

As important, we believe that remand will conserve administrative and judicial resources. If we choose to ignore the new Act and measure the County's rejection under the previous standards, as the County urges us to do in its supplemental briefs, the County (and possibly this court in another certiorari

---

[5] Section 332(c)(7)(B)(v) provides:

Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

proceeding) could likely face a new application from Cellular One. Since the doctrine of claims preclusion (res judicata) is sparingly applied in the zoning arena, *see generally* E.C. YOKLEY, ZONING LAW AND PRACTICE § 25-10 (4th ed. 1979), we see nothing preventing Cellular One from resubmitting its application and demanding that the County apply the new federal law in a second attempt.

Lastly, we observe that at least one other court has applied this same remedy to similar circumstances. In *L.I.M.A. Partners v. Borough of Northvale*, 530 A.2d 839 (N.J. Super. Ct. App. Div. 1987), the New Jersey Superior Court faced a complaint by a commercial broadcaster which had been denied a variance to install a new satellite dish. *Id.* at 841. The landowner convinced the trial court that the municipality's restriction on dish antenna violated the First Amendment. But like in this case, during the pendency of the appeal the federal government, specifically the Federal Communications Commission, adopted regulations which preempted local zoning restrictions on dish antennas. *See id.* at 843-44. The appellate court thus concluded that determining how the new federal rules affected the zoning decision required more factfinding and remanded the case to the trial court for further consideration. *Id.* at 841-42, 844.

Thus, given the unique circumstances of this case, we conclude that the most appropriate remedy is to remand the entire matter to the County with directions that it evaluate Cellular One's application in light of the recently passed Telecommunications Act. In *State ex rel. Lomax v. Leik*, 154 Wis. 2d 735, 740-41, 454 N.W.2d 18, 21 (Ct. App. 1990), this court held that we

may order remand in common law certiorari procedures when the record is insufficient to address the issues raised. We conclude that this remedy should be used in this instance. We accordingly direct the County to examine the record de novo and permit Cellular One to introduce its evidence regarding other tower approvals.

*By the Court.*—Judgment reversed and cause remanded with directions.